# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

MICHELE M.,

      Plaintiff,

      vs.

MARTIN J. O'MALLEY, Commissioner of Social
Security,

      Defendant.

Case No.  4:22-CV-00460-REP

**MEMORANDUM DECISION AND
ORDER**

---

Pending is Petitioner Michele M.'s Petition for Review (Dkt. 1) and an accompanying

Brief in Support of Petition to Review (Dkt. 16) appealing the Social Security Administration's

final decision finding her not disabled and denying her claim for disability insurance benefits.

*See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having

carefully considered the record and otherwise being fully advised, the Court enters the following

Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a sixty-six-year-old woman with a constellation of health problems,

including degenerative disc disease, joint disease, thyroid issues, depression, and anxiety.  AR

23, 216, 568, 773.  On April 20, 2018, Petitioner filed an application for social security disability

income ("SSDI") alleging a disability onset date of June 2, 2017.  AR 21.  The claim was denied

at every level and Petitioner appealed to federal court.  *See Michele M. v. Kijakazi*, Case No.

4:21-cv-00153-REP (D. Idaho).  On November 24, 2021, the Court remanded the case for further

proceedings upon stipulation of the parties.  *See* Dkt. 22 in 21-cv-153.

**MEMORANDUM DECISION AND ORDER - 1**

On remand, the claim was assigned to a new Administrative Law Judge ("ALJ").  AR 565.  On September 8, 2022, after hearing testimony from Petitioner, the ALJ issued a second decision that was unfavorable to Petitioner.  AR 565-581.

Petitioner elected not to appeal this decision to the Appeals Council.  AR 558.  After sixty days, consequently, the ALJ's decision became the final decision of the Commissioner of Social Security.  AR 563.

On November 8, 2022, Petitioner filed this case.  Petitioner raises two, interrelated claims of error.  Both relate to her mental health.[1]  First, Petitioner maintains that the ALJ failed to provide valid reasons for rejecting the opinions of Aaron Harris, Ph.D., a consulting examiner.  Pt.'s Br. at 13-18 (Dkt. 16).  Second, Petitioner contends that the ALJ erred when she found that Petitioner's mental health conditions were not severe.  *Id.* at 18-20.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

---

[1] Petitioner does not raise any challenge to the ALJ's findings regarding her physical health.  *See generally* Pt.'s Br. (Dkt. 16).  Any such challenges, consequently, have been waived.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (issues which are not specifically and distinctly argued in a party's opening brief are waived).

**MEMORANDUM DECISION AND ORDER - 2**

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER - 3**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

**MEMORANDUM DECISION AND ORDER - 4**

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: inflammatory polyarthropathy, degenerative disc disease, obesity, and degenerative joint disease. AR 568.  The ALJ determined that these impairments limit Petitioner to a subset of light work. AR 572, 581.  Based on the testimony of a vocational expert ("VE"), the ALJ concluded that

**MEMORANDUM DECISION AND ORDER - 5**

Petitioner's past work as a medical assistant fit within this subset.  AR 579.  In the alternative,

the ALJ found that Petitioner could work as a phlebotomist.  AR 579-580.  The ALJ, therefore,

found that Petitioner was not disabled.  AR 581.

## DISCUSSION

I.  Petitioner's Challenge to the RFC

    *a.  The Medical Opinion Evidence*

Petitioner has suffered from anxiety and depression for over thirty years.  AR 836.

During much of this period, Petitioner worked as a medical assistant.  AR 226.  Petitioner

stopped working in June 2017.  AR 217.  According to Petitioner, various physical conditions

combined with worsening anxiety and depression made it too difficult to work.  AR 42-43, 216,

233, 252.  The record contains five medial opinions[2] assessing the functional impact of

Petitioner's depression and anxiety.

First, a consulting doctor, Ralph Heckard, M.D., evaluated Petitioner on October 13,

2018.  AR 480.  Dr. Heckard conducted physical examinations, a neurological examination, and

a mini-mental status examination ("MMSE").  AR 482-485.  The mental health examinations

revealed that Petitioner had mild anxiety.  Her speech, however, was clear and coherent; her

memory, concentration, and general fund of knowledge were intact; she was able to maintain

attention and concentration throughout the examination; and Petitioner scored a 30 out of 30 on

the MMSE.  AR 483, 486.  Dr. Heckard concluded that Petitioner did not present with "mental

status features which would significantly impair or preclude" either (i) "her ability to make

---

[2] For ease of reference, the Court uses the term "medical opinions," colloquially, to include both
the "medical opinions" and the "prior administrative medical findings."  *See* 20 C.F.R. §
404.1560.

**MEMORANDUM DECISION AND ORDER - 6**

reasonable workplace decisions and occupational adjustments" or (ii) "her ability to maintain attention, concentration, or persistence with work related- duties."  AR  486.

Second, on November 1, 2018, Michael Dennis, Ph.D. reviewed Dr. Heckard's opinions, Petitioner's medical records, and her function reports.  AR 68-70.  Dr. Dennis concluded that Petitioner's anxiety and depression were mild and that these conditions would not prevent her from working.  AR 68-70, 75.

Third, on January 16, 2019, Dave Sanford, Ph.D. reevaluated Petitioner's medical records at the reconsideration level.  AR 84-85.  Dr. Sanford stressed that Petitioner tested within normal limits on her mental examination and agreed that Petitioner had only mild mental health issues. AR 85.

Fourth, on February 18, 2020, Petitioner visited her primary care doctor, Boyd K. Southwick, D.O. for treatment.  Petitioner informed Dr. Southwick that her claim for disability had been disallowed.  AR 832.  In response, Dr. Southwick added a paragraph to his note explaining that her depression was "not well controlled."  AR 834.  Dr. Southwick opined that Petitioner was "disabled from her depression as she is not able to be gainfully employed given her current circumstances, and even with better treatment, she will not be able to re-enter the workforce."  AR 834.

Finally, on May 1, 2020, Petitioner obtained a psychological evaluation from Aaron A. Harris, Ph.D.  Dr. Harris diagnosed Petitioner with recurrent, moderate major depressive disorder and generalized anxiety disorder.  AR 839.  Dr. Harris asserted that these conditions had a "marked adverse effect" on Petitioner's "cognitive behavioral, and emotional functioning."  AR 839.  Dr. Harris concluded that "the effect of the symptoms and severity of these conditions on

**MEMORANDUM DECISION AND ORDER - 7**

her daily functioning is significant and interfere with their [sic] ability to maintain any kind of consistent employment."  AR 839.

These opinions presented a genuine conflict, which the ALJ had a duty to resolve.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (it is the ALJ's responsibility to determine credibility and resolve conflicts within the record).  The ALJ satisfied this duty by carefully considering each opinion and explaining why she found the opinions of Drs. Heckard, Dennis, and Sanford more persuasive than the opinions of Dr. Southwick or Dr. Harris.  AR 576-578.  Petitioner does not challenge the ALJ's rejection of Dr. Southwick's opinion.  Petitioner argues, however, that the ALJ should have credited Dr. Harris over the other doctors.

    *b.  The Standard of Review*

For claims filed on or after March 27, 2017, the ALJ evaluates the persuasiveness of each medical opinion based on several factors, including supportability, consistency, relationship with the claimant, and specialization.  20 C.F.R. § 404.1520c(a).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); 20 C.F.R. § 416.920c(b)(2).  The factor of supportability looks inward at a medical opinion's bases: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  The factor of consistency, on the other hand, looks outward, comparing the opinion to the other evidence in the record: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 404.1520c (c)(2).

The Court reviews the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard.  To be upheld, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Woods*, 32 F.4th at 787.

> *c.   The ALJ's Analysis*

The ALJ provided a detailed list of reasons for finding Dr. Harris's opinions less persuasive than the opinions of the other consulting doctors.  AR 578.  For example, the ALJ pointed out that while Dr. Harris found extreme mental limitations, he observed mostly normal behavior and cognition.  AR 578.  In addition, the ALJ noted the tension between Dr. Harris's conclusions and (i) Petitioner's prior mental status evaluations, (ii) "the dearth of observations of mental function deficits" in the medical record, and (iii) the "lack of recommendations [in the medical record] for specialized mental health treatment or hospitalization."  AR 578.  This analysis appropriately focused on the supportability and consistency of the medical opinion.  *See* 20 C.F.R. § 404.1520c(b)(2).  It is also supported by substantial evidence.

> i.   <u>The ALJ provided reasonable grounds for questioning the supportability of Dr. Harris's report.</u>

The first reason the ALJ provided for finding Dr. Harris's opinion unpersuasive centered on the supportability of his findings.  Specifically, the ALJ found that there was a disconnect between the evidence Dr. Harris considered – namely, his testing and examination of Petitioner and his review of the medical records – and his conclusion that Petitioner had extensive mental limitations.  While this it not the only possible reading of Dr. Harris's report, it is a reasonable one.

**MEMORANDUM DECISION AND ORDER - 9**

For example, the ALJ correctly noted that Dr. Harris observed mostly normal behavior and cognition during his examination.  AR 578; *see also* AR 837 (finding that Petitioner was "cooperative and friendly," had coherent and understandable speech, appeared to have average intellectual functioning, had no attention issues, and had "no perceptual, thought content, or thought process disturbances").  The only cognitive issue Dr. Harris personally observed was that Petitioner's "concentration appeared to be decreased at time [sic]."  AR 578, 837.  The ALJ rationally concluded that these findings stood in tension with Dr. Harris's assertion that Petitioner's anxiety and depression had *marked* adverse effects on her mental functioning in all areas, including her cognition.  *See Darden v. Saul*, 855 F. App'x 352, 355 (9th Cir. 2021) (unpublished) (an ALJ may reasonably reject the opinions of a psychologist where the mental status examination contradicts "the limitations in [the] opinion").

The ALJ determined that the testing Dr. Harris conducted could not explain his conclusions either.  As the ALJ noted, Dr. Harris performed a series of symptom report batteries.  AR 578; AR 837.  The ALJ found that these tests "offer[ed] only a very limited view of the specific effects of the claimant's mental impairments on her vocational functioning based on the claimant's self-reports."  AR 578.  This is an accurate statement.  The testing Dr. Harris performed assessed the breadth and severity of Petitioner's reported symptoms, by assigning Petitioner a percentile score for depression, anxiety, and various other personality patterns.  AR 837-839.  These scores do not translate neatly into specific functional limitations.

Nor did they compel a finding that Petitioner was disabled, as Petitioner seems to argue on appeal.  Dr. Harris's testing revealed that Petitioner had significantly elevated scores compared to the non-patient population, as one would expect.  But Petitioner had scores within a normal range for the out-patient mental health population.  AR 837.

**MEMORANDUM DECISION AND ORDER - 10**

As these examples show, the ALJ did not reject Dr. Harris's report "simply because of the relative imprecision of the psychiatric [or psychologic] methodology" which necessarily depends "in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck*, 869 F.3d at 1049.  To the contrary, the ALJ carefully considered Dr. Harris's methodology, observations, testing, and written explanations.  AR 578.  Based on this review, the ALJ rationally concluded that Dr. Harris's opinions were less supported than the opinions of the other consultants.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216-17 (9th Cir. 2005) (upholding the rejection of two psychological assessments where those assessments were brief, conclusory, and unsupported by any "clinical evidence" other than the Petitioner's unadorned subjective complaints).

ii.   <u>It was not error for the ALJ to note that Dr. Harris only examined Petitioner once.</u>

As part of her supportability assessment, the ALJ noted that Dr. Harris performed a "one-time" examination of Petitioner "at the request of the claimant's attorney . . . for legal purposes." AR 578.  These would not have been sufficient reasons, standing alone, to explain the ALJ's weighing of the medical opinions.  But they were undoubtedly valid factors for the ALJ to have considered.  20 C.F.R. §§ 404.1520c(c).  As the ALJ was aware, neither Dr. Harris, an examining consultant, nor Drs. Heckard, Dennis, and Sanford regularly saw or treated Petitioner. AR 576-578.  The time-limited nature of Dr. Harris's evaluation and the absence of a treating relationship was, consequently, one legitimate reason for not preferring Dr. Harris's opinion over the opinions of the other three consultants.

**MEMORANDUM DECISION AND ORDER - 11**

      iii.    <u>The ALJ correctly acknowledged the conflict between the opinions of Dr.
Harris and Dr. Heckard.</u>

One of the primary reason the ALJ provided for rejecting the opinions of Dr. Harris was
the conflict between his opinions and "the medical and other evidence, including the evidence
from Dr. Heckard."  AR 578.  Petitioner contends that this was error because "Dr. Heckard
performed [Petitioner's] *physical* consultative examination and is not a mental health
professional qualified to opine on [her] *mental* limitations and diagnoses."  Pt.'s Br. at 16 (Dkt.
16).  This assertion lacks merit.

Dr. Heckard did not limit his evaluation of Petitioner to her physical health.  He
conducted both a neurological examination and a MMSE.  AR 482-485.  Based on these
examinations, Dr. Heckard issued opinions about Petitioner's mental functioning.  AR  486.
These opinions fall within Dr. Heckard's expertise as a general practitioner.  *Trnavsky v. Colvin*,
636 F. App'x 390, 392 (9th Cir. 2016) (unpublished) (a primary care physician is qualified to
opine on a claimant's mental health).

To the extent Petitioner is suggesting that the ALJ should have preferred Dr. Harris's
opinion over Dr. Heckard because Dr. Harris is a specialist and Dr. Heckard is not, this is not a
basis for remand.  Specialization is but one factor in the persuasiveness calculation.  20 C.F.R.
§§ 416.920c(c)(1)-(5).  The more important factors are supportability and consistency.  20 C.F.R.
§ 416.920c(b)(2).  Because the ALJ found Dr. Harris's opinion insufficiently supported and
consistent, when compared to the opinions of the other consultants, Dr. Harris's specialization is
not controlling.  AR 578.

**MEMORANDUM DECISION AND ORDER - 12**

     iv.    <u>It was rational for the ALJ to conclude that Dr. Harris's opinions conflicted with the medical record and with Petitioner's reported activities.</u>

The final reason the ALJ provided for rejecting Dr. Harris's opinions was the conflict between these opinions and the other evidence.  AR 578.  To explain this conclusion, the ALJ incorporated her prior discussion of other medical opinions and her Step Two analysis by reference.  AR 578.  In these parts of the decision, the ALJ stressed that:

- Petitioner could drive a car, which showed that Petitioner could remember how to get places, focus, and process information at a level necessary to operate an automobile.

- Petitioner could perform normal household activities, which require a basic level of understanding, remembering, and applying information.

- Petitioner was able to understand the hearing process and recall information when she testified.

- Petitioner's medical providers observed no significant or ongoing cognitive issues at her treatment visits.

- At doctor's visits, Petitioner's generally displayed normal alertness and orientation, normal behavior, appropriate thought content, and normal attention span and concentration.

- Petitioner reported no issues getting along with family, friends, neighbors, or others.

- Petitioner did not require inpatient hospitalization for mental health reasons during the relevant period.

- Finally, Petitioner typically had normal psychiatric examinations and no specialized mental health treatment other than prescription medication.

**MEMORANDUM DECISION AND ORDER - 13**

AR 570, 577.  Petitioner does not address this portion of the ALJ's decision.  Instead, Petitioner emphasizes that Dr. Southwick believes she is disabled, highlights the portions of his records that discuss her anxiety and depression, and accuses the ALJ of "cherry-picking."  Pt.'s Br. at 17 (Dkt. 16).

There are two problems with this approach.  First, Petitioner has not challenged the ALJ's rejection of Dr. Southwick's opinions.  These opinions, consequently, cannot form the basis for requiring the ALJ to give more weight to Dr. Harris's opinions.

Second, Petitioner has not shown that the ALJ construed the record *unreasonably*.  An ALJ "cherry picks" when she selectively cites statements that belie the plain import of the medical record, while ignoring evidence that contradicts her opinion.  *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014).  The key to a "cherry-picking" challenge is unreasonableness.  When an ALJ is faced with conflicting opinions, it is not cherry-picking for the ALJ to weigh the competing evidence and choose among several rational interpretations, some of which may favor the claimant and some of which may not.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").

Here, it is undisputed that Petitioner has chronic anxiety and depression.  The question facing the ALJ was how much these conditions impeded Petitioner's ability to function at work.  Dr. Southwick's records – as opposed to his opinions on the ultimate issue of disability – do not definitively answer this question.  As the ALJ noted, these records show generally normal behavior and cognition.  AR 578; *see also* AR 411, 422, 426.  The ALJ properly considered these records, as well as all of the other evidence in the record – including numerous normal mental status examinations – when rejecting the opinions of Dr. Harris.  AR 570 (citing normal

mental status examinations throughout 2017, 2018, and 2019).  This does not constitute improper

cherry-picking.  *See Wesselius v. Kijakazi*, No. 20-35386, 2021 WL 4948928, at *1 (9th Cir. Oct.

25, 2021) (an ALJ's decision was not a result of "cherry-picking" where the "ALJ's findings

were supported by a broad set of mental status exams covering the entire relevant time period").

     In reaching this conclusion, the Court stresses that its role in reviewing the Social

Security Commissioner's decisions is "a limited one."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th

Cir. 1984).  The question on appeal is not whether substantial evidence exists to support the

claimant's preferred findings, but whether substantial evidence supports the ALJ's findings.

*Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).  In determining whether such evidence

exists, the Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ."

*Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).  As long as the evidence rationally supports

the ALJ's conclusions, these conclusions must be affirmed.  *Tommasetti v. Astrue*, 533 F.3d

1035, 1038 (9th Cir. 2008); *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)

(when diverging medical opinions provide substantial evidence for two different conclusions, it

"solely the province of the ALJ to resolve the conflict").

     Because the ALJ provided rational reasons for preferring the opinions of Drs. Heckard,

Dennis, and Sanford over the opinion of Dr. Harris, this Court must affirm.

    II.  <ins>Petitioner's Step Two Challenge</ins>

     In her second challenge on appeal, Petitioner attacks the ALJ's Step Two findings.

Specifically, Petitioner claims that the ALJ should have found that her anxiety and depression

were severe impairments.  Pt.'s Br. at 18 (Dkt. 16).

     This does not represent an independent basis for remand under the facts of this case.

Where, as here, Step Two is decided in the claimant's favor, any error in finding that an

**MEMORANDUM DECISION AND ORDER - 15**

impairment was not severe is harmless and cannot be the basis for remand unless the petitioner

shows that the ALJ's alleged error extended beyond the Step Two findings and infected the RFC.

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th

Cir. 2007) (any error in failing to find an impairment severe at step two is harmless if the ALJ

properly considers any resulting limitations in assessing the claimant's RFC).  Petitioner only

identifies one deficiency in the RFC – that the ALJ erred in her evaluation of Dr. Harris's

opinions.  For the reasons discussed above, the Court finds that the ALJ reasonably rejected the

opinions of Dr. Harris in crafting the RFC.

### ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of

Petition to Review (Dkts. 1 & 16) are **DENIED,** and the decision of the Commissioner is

**AFFIRMED.**

DATED: February 20, 2024

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 16**